## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ESTATE OF WILLIAM BECZO, Deceased, By and Through JILLIAN BECZO as Administratrix,<br><br>     Plaintiff,<br><br> v.<br><br>PORT LUMBER CORP. and GEORGE BAGWELL,<br><br>     Defendants. | Civil Action No. 23-1338 (MAS) (RLS)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

SINGH, United States Magistrate Judge.

PRESENTLY before the Court is a Motion by Plaintiff the Estate of William Beczo ("Decedent"), by and through Jillian Beczo as Administratrix of the Decedent's Estate, seeking to Disqualify Daniel Dolente, Esq., John Farrell, Esq., and the law firm of Marshall Dennehey, P.C. (collectively, the "Firm"), from representing Defendant George Bagwell, Jr. ("Bagwell") in the instant matter (the "Motion"). (Doc. Nos. 37, 38). Defendants Bagwell and Port Lumber Corporation ("Port Lumber") (collectively, "Defendants") oppose the Motion, (Doc. No. 41), to which Plaintiff has replied, (Doc. No. 42). Defendants thereafter filed a sur-reply, without leave of Court, (Doc. No. 43), to which Plaintiff objects, (Doc. No. 44). Defendants thereafter requested leave to file the sur-reply. (Doc. No. 45). For good cause shown, and exercising the Court's discretion, the Court grants Defendants leave to file its sur-reply for the Court's consideration on the instant Motion. *See Robbins v. Playhouse Lounge*, Civ. No. 19-8387, 2021 WL 2525709, at *3 (D.N.J. June 21, 2021). In connection with the Motion, the Court ordered Defendants to provide additional information for an *in camera* review, which the Court received. (Doc. No. 47).

Having fully reviewed the parties' respective submissions on the Motion, and considering the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), for the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

## I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

This matter arises out of a tragic accident in the early morning hours of June 17, 2022 in the northbound lanes of the New Jersey Turnpike.  Non-parties had been involved in a motor vehicle accident, leaving a disabled vehicle in the right lane of travel, which caused further collisions. During the collisions, the Decedent exited his vehicle.  Bagwell, an independent contractor who operated a tractor with an open-bed trailer owned by Port Lumber, approached the area and struck the Decedent.  (*See generally* Doc. No. 1).

On March 9, 2023, Plaintiff initiated this action, asserting negligence, wrongful death, and survival claims against Defendants.  (*See* Doc. No. 1).  Defendants filed their respective Answers through separate counsel.  (*See* Doc. Nos. 13, 21).  Shortly after the filing of his Answer, Bagwell's counsel sought leave to withdraw as counsel, which was granted.  (*See* Doc. Nos. 19, 23).  In connection with that motion to withdraw as counsel, Bagwell's former counsel represented that he had contact with a representative of Port Lumber's insurance carrier, Pennsylvania Lumbermans Mutual Insurance Company ("Lumbermans"), who indicated that Lumbermans may provide certain coverage for the claims asserted against Bagwell in this matter.  (*See* Doc. No. 19 at ¶ 7). Lumbermans had retained counsel at The Firm to appear on behalf of Port Lumber in this matter.

After the Court granted Bagwell's prior counsel leave to withdraw, Plaintiff wrote to the Court, raising concerns that the same counsel could not represent both Port Lumber and Bagwell here, to which Port Lumber's counsel responded.  (*See* Docs. No. 24, 25, 27).  Following a conference held on August 30, 2023, the Court designated Bagwell as proceeding *pro se* and

directed Port Lumber to advise the Court as to whether Lumbermans would provide representation to Bagwell by September 13, 2023.  (Doc. No. 30).  Mr. Dolente timely advised the Court that Lumbermans authorized him and his firm to represent Bagwell.  (Doc. No. 33).  On September 13, 2024, Mr. Dolente entered a notice of appearance on behalf of Bagwell.  (Doc. No. 34).

Plaintiff objected to the appearance and, with leave, filed the instant Motion to disqualify The Firm from representing both Port Lumber and Bagwell.  (Doc. Nos. 37, 38).  Plaintiff generally argues that a conflict of interest exists because Port Lumber and Bagwell will need to take adverse positions on issues that may be raised in this litigation: whether Port Lumber can be held liable for its independent contractor, Bagwell, through *respondeat superior* and/or vicarious liability theories; and to what extent, if any, there should be an apportionment of fault between the two defendants as alleged joint tortfeasors.  (*See* Doc. No. 37).  Defendants oppose the Motion, contending that Plaintiff does not have standing to bring the instant Motion, will suffer no undue prejudice from Defendants' joint representation, and no conflict of interest currently exists between Bagwell and Port Lumber because they share a common joint defense: that the accident at issue occurred due to "an unoccupied disabled vehicle located in the lane of traffic without any lights or other readily identifying features."  (*See* Doc. No. 41).  Defendants further contend that, even if a conflict does exist, both Defendants knowingly waived any potential conflicts of interest in writing through executed waivers.  (*See* Doc. No. 41).

In reply, Plaintiff argues that a common defense does not overcome the conflict of interest, which cannot be waived.  (*See* Doc. No. 42).  In sur-reply, Defendants address what they contend were errors in Plaintiff's Reply.  (*See* Doc. No. 43).  Specifically, Defendants contend that Bagwell and Port Lumber are aligned in their defense, the cases cited by Plaintiff are either inapplicable or

misplaced, and Defendants may waive the kind of conflict asserted by Plaintiff, which they have done in writing.  (*See* Doc. No. 43).

The Court thereafter ordered Defendants to submit for *in camera* review the alleged signed waivers relied upon in their submissions, with which Defendants complied and which the Court has reviewed.  (*See* Doc. No. 47).

## II.    LEGAL STANDARD

In considering a motion to disqualify counsel, the Court weighs the standards applicable to the legal profession "against a client's right to freely choose his counsel."  *Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995).  "'A court may use its inherent disciplinary power over the advocates appearing before it to disqualify an attorney.'"  *In re Boy Scouts of Am.*, 35 F.4th 149, 159 (3d Cir. 2022) (quoting *in re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984)).  The Local Rules of this Court provide that the American Bar Association's Rules of Professional Conduct ("RPC"), as revised by the Supreme Court of New Jersey, govern the conduct of members of the bar admitted to this Court.  *See* L. Civ. R. 103.1(a); *Jorjani v. New Jersey Instit. Of Tech.*, No. 18-11693, 2023 WL 2535318, at *2 (D.N.J. Mar. 16, 2023).

Courts typically disfavor motions to disqualify because they are "drastic measure[s] which courts should hesitate to impose except when absolutely necessary."  *Carlyle Towers Condominium Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) (internal quotation marks and citation omitted).  As a result, "the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified."  *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).  "Although a violation of a[n] RPC may result in disqualification, it is 'never automatic.'"  *Jorjani*, 2023 WL 2535318, at *2 (quoting *United States v. Miller*, 624 F.2d

1198, 1201 (3d Cir. 1980)).    Rather, within the Court's discretion, the Court may find disqualification is not an appropriate remedy even where an ethical conflict exists or is assumed to exist.  *In re Boy Scouts of Am.*, 35 F.4th at 160.  In so finding, the Court may consider relevant factors based on the particular case, which "generally include the ability of litigants to retain loyal counsel of their choice, their ability of attorneys to practice without undue restriction, preventing the use of disqualification as a litigation strategy, preserving the integrity of legal proceedings, and preventing unfair prejudice." *Id.* (citations omitted).  Indeed, "[s]ometimes disqualification is more disruptive than helpful[.]" *Id.*; *see, e.g.*, *Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 460-61 (D.N.J. 2010) (exercising court's discretion in finding that disqualification was not the appropriate remedy to protect the integrity of the proceedings and maintain public confidence in the judicial system).

Here, Plaintiff argues that simultaneous representation of the two defendants poses a conflict of interest.  RPC 1.7 prohibits concurrent conflicts of interest where "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer."  R.P.C. 1.7(a).  Nevertheless, subsection (b) of that RPC permits a lawyer to proceed with representation where:

> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (3) the representation is not prohibited by law; and
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

R.P.C. 1.7(b).

## III.   DISCUSSION

Plaintiff argues that disqualification is warranted because Defendants have interests adverse to each other in that they would dispute between themselves the nature of their legal relationship as well as the apportionment of any fault between them as tortfeasors.   Defendants argue that Plaintiff lacks standing to move to disqualify the Firm.   Defendants also argue that, even assuming standing, there is no conflict between Defendants, pointing out that they have not asserted cross-claims between them, and, if there were a conflict, Defendants each knowingly waived such conflict.   In reply, Plaintiff contends that she does have standing, Defendants are directly adverse to each other irrespective of whether cross-claims exist and such a conflict cannot be waived.   In their sur-reply, Defendants point out their common interests in defense of this matter and differentiate the case law relied upon by Plaintiff.

As to Defendants' contention that Plaintiff lacks standing to bring the instant motion, district courts in this Circuit are split on the issue.   *See in re Pressman*, 459 F.3d 383, 402 n.20 (3d Cir. 2006) (recognizing disagreement amongst courts but declining to address the issue); *compare Shire Labs. Inc. v. Nostrum Pharms., Inc.*, Civ. No. 03-4436, 2006 WL 2129482, at *4 (D.N.J. July 26, 2006) ("This Court recognizes that a party does not have standing to bring a Motion to Disqualify based on a material conflict of interest unless the party is either a former or current client.") *with Irene Schneider Fam. Tr. v. PNC Bank, Nat'l Ass'n*, Civ. No. 23-3146, 2024 WL 712562, at *4 (D.N.J. Feb. 20, 2024) (citing *Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675, 686-687 (3d Cir. 2005) (finding that "non-clients have standing, through their attorneys, to raise issues concerning ethical violations by opposing counsel"); *Infosphere Consulting, Inc. v. Habibi Life, LLC*, No. 19-15577, 2020 WL 4559138, at *3 (D.N.J. Aug. 7, 2020) ("Adversaries, as well as

6

former clients, may raise conflict of interest concerns." (citations omitted)).  Here, the Court is persuaded by the authority that finds a non-client has standing to seek disqualification of opposing counsel and finds that Plaintiff has standing to bring the instant Motion.

Turning to the substantive issue, the Court finds that Plaintiff has failed to establish a non-waivable conflict under RPC 1.7 and, even if she has, the relevant factors as discussed by the Third Circuit in *Boy Scouts of America* weigh against disqualification.  At this stage of the case and based on the facts presented, Defendants' interests are sufficiently aligned and not adverse to warrant a finding that a conflict exists under RPC 1.7.  It appears from the record at this stage that Defendants' interests are aligned under a common joint defense that the accident at issue occurred due to "an unoccupied disabled vehicle located in the lane of traffic without any lights or other readily identifying features." (*See* Doc. No. 21 at ¶ 12; Doc. No. 41).  As such, Defendants are not directly adverse to each other and there is not a significant risk that the Firm's representation of either Defendant would be materially limited.  *See* R.P.C. 1.7(a).  The potentially adverse interests raised by Plaintiff are speculative and not relevant at this time.  *See Infosphere*, 2020 WL 4559138, at *3 (recognizing that possibility of adverse interests between dual clients was speculative and not relevant).  Moreover, even assuming a conflict exists, the Court has reviewed *in camera* the waivers executed by Defendants and finds such waivers to adequately meet the requirements of R.P.C. 1.7(b).  *See* R.P.C. 1.7(b); *High 5 Games, LLC v. Marks*, Civ. No. 13-7161, 2018 WL 2278103, at *10 (D.N.J. May 18, 2018) (denying a motion to disqualify defense counsel because there was no showing of an adverse relationship between the defendants, and even if a conflict did somehow exist, all defendants had consented to concurrent representation pursuant to RPC 1.7(b)).

Finally, the Court considers the speculative nature of the alleged conflict against Defendants' ability to choose their own counsel, the integrity of these proceedings, and the need to

prevent unfair prejudice to Defendants.   Weighing those factors, and exercising the Court's discretion, the Court finds that disqualification is not appropriate here.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, and for good cause shown,

**IT IS**, **THEREFORE**, on this **23d** day of **April 2024**,

**ORDERED** that Plaintiff's Motion to Disqualify Counsel (Doc. Nos. 37-38) is hereby **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is directed to **TERMINATE** the Motion pending at Docket Entry No. 38.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
_____
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**